Alicia Ruth, Inc. v. Commissioner.
Alicia Ruth, Inc. v. Commissioner
Docket No. 3205-67.
United States Tax Court
T.C. Memo 1969-47; 1969 Tax Ct. Memo LEXIS 249; 28 T.C.M. (CCH) 262; T.C.M. (RIA) 69047; March 11, 1969, Filed Stanley P. Kaplan, for the petitioner. Meno W. Piliaris, for the respondent. TIETJENS
Memorandum Findings of Fact and Opinion TIETJENS, Judge: The Commissioner determined deficiencies in and additions to petitioner's income tax as follows: Addition to Tax
Sec. 6653(a),
Year
Deficiency
I.R.C. 1954
1962
$2,898.80
$144.94
1963
1,336.50
66.83
1964
1,903.44
95.17
We must decide to what extent compensation paid by petitioner in these years to Max Eder *250 constitutes an ordinary and necessary expense which is properly deductible under section 162(a)(1) of the Internal Revenue Code of 1954. [1] If the first issue is decided for petitioner, we must decide whether petitioner is entitled to a net operating loss carryforward to 1964. In the event we decide the compensation issue for the Commissioner, we must decide whether petitioner is liable for the negligence penalty provided by section 6653(a) for each of these years. Findings of Fact Some of the facts have been stipulated and are so found. Alicia Ruth, Inc. (hereinafter referred to as petitioner), a corporation, had its principal place of business at Miami Beach, Florida, at the time it filed its petition herein. Petitioner filed corporate income tax returns for 1960, 1961, 1962, 1963 and 1964 with the district director of internal revenue, Jacksonville, Florida. For some years prior to 1960 and continuing through 1964, Max Eder owned 50 percent of the outstanding capital stock of petitioner. Alice L. Sasson owned the remaining 50 percent. Petitioner retails *251 ladies lingerie and household linens in a shop in the lower lobby of the Fontainebleau Hotel in Miami Beach. For a period of years prior to September 30, 1961, petitioner operated a similar shop in the lower lobby of the Americana Hotel in Miami Beach. Both shops were so situated that no walk-in or street business could be expected. Entrance to each shop was through the respective hotels. Petitioner expended only nominal amounts for advertising. Petitioner sold lingerie and household linen items at prices ranging from a few dollars to as much as seven hundred dollars. A customer might spend four, five or six hundred dollars at one time. Some sales amounted to as much as a thousand dollars. Max Eder did not share any responsibility for the day-to-day management of the shop; he occasionally came there with persons who made purchases. Petitioner kept no records of what sales or the amounts thereof which were attributable to Max's promotional efforts. Ralph Sasson, Alice Sasson's husband, managed petitioner's business and did selling, buying, hiring and firing. He had total responsibility for operation of the business. Ralph worked every day for petitioner. So did Alice. Salaries *252 paid to Ralph and Alice Sasson were as follows: Year
Ralph Sasson
Alice Sasson
1960
$11,600
$ 3,000
1961
12,200
3,000
1962
13,000
3,000
1963
9,000
3,000
1964 8,000
3,000 53,800
$15,000 In each of the years 1960 through 1964, for which Max was paid the indicated annual salaries, the gross sales of petitioner, gross profit and Max's salary were as follows: Taxable Year
Gross Sales
Gross Profit
Max's Salary
1960
$272,008
$133,328
$18,550
1961
227,150
106,686
16,800
1962
161,107
79,315
13,000
1963
148,019
66,769
7,900
1964
156,155
70,362
7,650
As shown on its returns, petitioner's taxable income or loss before net operating loss deduction was as follows: Year
Amount
1957
* $ 841.40
1958
* 400.00
1959
* 2,438.43
1960
(1,712.71)
1961
(2,681.26)
1962
(3,337.33)
1963
(3,444.99)
1964
1,001.98 Petitioner paid no dividends. On its income tax returns for the years 1960 through 1964, petitioner deducted the 264 amounts it paid to Max during those years as reasonable compensation for services actually performed *253 by him. The Commissioner determined deficiencies in petitioner's 1962, 1963 and 1964 income taxes reflecting his disallowance of petitioner's deduction of any amount as compensation for Max's services. On its 1964 return, petitioner claimed under section 172 a deduction for a net operating loss carryover to such year. The Commissioner has disallowed any loss carryover to such year on the ground that because petitioner has not shown the compensation paid to Max Eder for the years 1960 through 1963 was reasonable, no loss for those years has been established. [2]
The Commissioner further determined that petitioner is liable *254 for the addition to tax for negligence or intentional disregard of rules and regulations under section 6653 (a) for each of the taxable years 1962, 1963 and 1964. Opinion Section 162(a) (1) of the Internal Revenue Code of 1954 provides that "a reasonable allowance for salaries or other compensation for personal services actually rendered," shall be allowed as a deduction. In order to avail itself of this deduction, closely-held corporations frequently disguise as compensation the payments of dividends. The Commissioner asserts this is such a case. Where the Commissioner challenges the nature of corporate payments to a shareholder the determinative fact is whether the shareholder actually rendered services of value equivalent to the amount of claimed compensation. The burden of proof is upon the taxpayer to adduce evidence sufficient for the Court to determine the value of the services, if any, so rendered. The petitioner has adduced some evidence in the form of testimony as to the nature of its business, and the services alleged to have been performed by Max Eder. The stipulation of facts produced skeletal facts about petitioner and included the tax returns *255 of petitioner for the years 1960 through 1964. No books of the petitioner and no corporate records were offered. Petitioner's evidence, other than the stipulation, consisted of the testimony of Ralph Sasson, husband of Alice L. Sasson. Alice owned 50 percent of the petitioner's stock. The only other witness for petitioner was Dorothy Herman, one of petitioner's salesladies. Ralph testified that he had responsibility for hiring and firing petitioner's employees, and for the setting of salaries. He said that Max Eder (the other 50 percent stockholder) was an "employee" during the years in question, apparently hired by Ralph. According to Ralph, Max would send in people to purchase items, sometimes "telling" him they were coming in, by phone or otherwise, and sometimes bringing them in. These sales were "good sales" in "dollar amounts." No records of these sales was maintained. Ralph "approximated," apparently in his mind, that these sales amounted to at least a third of the dollar volume of sales. What Max's duties were, the hours he spent at the shop or shops of petitioner and how his "salary" was set are open to question. Ralph indicated that the amount paid Max in salary was *256 determined from the amount of business Max brought to the store by sending in customers or bringing them to the shop. But he could not give the Court any average amount of such sales. In substance all he testified to was that such sales were "two or three a day at the very most and sometimes we'd go along for several days without any. They were substantial sales. They weren't sales for two or three or five dollars * * * but the customers he brought in were all substantial sales. You don't need more than two or three of those a day." The other of petitioner's witnesses, a saleslady of petitioner, added little. She testified she saw Max in the shop "sort of daily, I got a lot of customers from him." The dollar amount of sales that came through Max were "hard to determine." Max did not spend "a lot of time" in the shop. But she did see "him go in back and discuss business" with Ralph. How she knew what was discussed is not indicated in the testimony. 265 On the reasonable compensation issue, the most that we can say of the record in this case is that it is replete with omissions. Max, the protagonist, though in the wings, never received his cue from either party. We decide this *257 issue against the petitioner for failure to carry its burden of proof. On the other issue, the imposition of the addition to tax for negligence, the burden is on the petitioner. As we see it, no convincing evidence at all was presented. The most that can be said is that a double entry set of books was maintained by petitioner by an accountant who had "passed away a few months ago." No books were produced. Again, this issue is decided against the petitioner for lack of proof. Decision will be entered for the Commissioner. Footnotes
1. All statutory references are to the Internal Revenue Code of 1954 unless otherwise specified.↩
*. As stated on petitioner's return for 1960.↩
2. Though deficiencies for the years prior to 1962 are not before us it would be proper to reexamine those years for the purpose of determining the existence or nonexistence of a net operating loss carryback or carryforward to the years we do have before us. Phoenix Coal Co. v. Commissioner 231 F. 2d 420↩ (C.A. 2, 1956), affirming a Memorandum Opinion of this Court No Evidence was introduced on this point, and as the burden of proof was on the petitioner we approve the Commissioner's determination that no loss carryover to 1964 is allowable.